IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


**KIMBERLY JORDAN,**                    Case No. 1:17 CV 0646

      Plaintiff,                    Judge Benita Y. Pearson

      v.                    Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                    REPORT AND RECOMMENDATION


## INTRODUCTION

Plaintiff Kimberly Jordan ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated March 28, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in January 2014, alleging a disability onset date of March 5, 2013. (Tr. 133-134). Her claims were denied initially and upon reconsideration. (Tr. 88-90, 92-93). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 98-99). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 2, 2016. (Tr. 29-52). On February 22, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 11-28). The Appeals Council denied Plaintiff's request for review, making

the hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on March 28, 2017. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Plaintiff was born in January 1963, making her 51 years old on her application date, and 50 on her alleged onset date. (Tr. 33).  Plaintiff had a high school education (Tr. 35), and prior work experience as a housekeeper (Tr. 40). Her mother passed away in April 2012. *Id.*

Plaintiff testified her inability to work began in March 2013 when the tremor in her right hand worsened. (Tr. 40-41). Initially, the tremors only occurred on an occasional basis, but they became more constant over time and it was difficult to grasp items. *Id.*

Plaintiff had difficulty with buttons, tying her shoes, brushing her teeth, cutting her food, and toileting. (Tr. 42-43). The tremors caused balance issues because her right leg shook occasionally. (Tr. 52). Plaintiff testified she was unable to drive a car. *Id.*

Plaintiff testified her asthma did not limit her ability to work. (Tr. 45). She was not using an inhaler "because [she] ha[s]n't had trouble in a while." *Id.*

Regarding her depression and anxiety, Plaintiff testified she interacted well with her family, and had not experienced a panic attack "for quite a while". (Tr. 52-53). Plaintiff felt depressed when people stared at her tremor. (Tr. 52). She had not received any prescription medication for her mental impairments for over a year, and only relied on homeopathic remedies such as St. John's Wort. (Tr. 49).

Relevant Medical Evidence

In January 2009, Plaintiff's neurologist, Leonard Weinberger, M.D., sent a letter to Plaintiff's primary care physician, Harold Bowersox, D.O. (Tr. 217). Dr. Weinberger reported

2

Plaintiff complained of a tremor in her hands, which "cause[d] difficulty with fine movements, using a screw driver [sic], writing, and so forth." *Id*. Plaintiff reported the tremor had been present for several months, and her mother had a similar tremor. *Id*. Plaintiff denied stiffness, slowness, or difficulty walking. *Id*. A physical examination revealed Plaintiff had a "fine distal tremor when the hands [were] outstretched." *Id*. Dr. Weinberg described the tremor as "mild" and stated he would not recommend medication therapy. *Id*.

Plaintiff saw Dr. Bowersox in March 2013 for back issues which resulted from a "slip in the shower" one month prior. (Tr. 222). Plaintiff reported lower back pain and pain down the lateral aspects of both legs. *Id*. Examination revealed antalgic gait and difficulty rising from a seated position. *Id*. Additionally, Plaintiff reported she felt depressed due to her mother's death. *Id*. Dr. Bowersox diagnosed sacroiliac dysfunction and "prolonged grief". *Id*. The treatment notes did not document any tremor-related complaints or diagnosis. *See id*.

Plaintiff returned to Dr. Bowersox in September 2013 for assistance with disability paperwork. (Tr. 226). Dr. Bowersox also followed up regarding Plaintiff's continued panic attacks, anxiety, and depression. *Id*. Plaintiff also reported a tremor in her right hand that had worsened recently, and she could not do work with the hand. *Id*. Plaintiff reported she could not maintain her job due to "disability of the hand plus the anxiety and depression." *Id*. On examination, Dr. Bowersox found weakness in Plaintiff's extremities, especially the legs. *Id*. Plaintiff exhibited appropriate mood and affect. *Id*. Dr. Bowersox diagnosed depressive disorder, prolonged grief reaction, anxiety, panic attacks, and social anxiety disorder. *Id*. Plaintiff started St. John's Wort capsules, Aconitum Napellus, and Ignatia Amara. (Tr. 226, 228).

In December 2013, Plaintiff saw Dr. Bowersox for asthma related symptoms. (Tr. 230). Plaintiff reported she was exposed to a smoking neighbor and the odor set off her asthma. *Id*.

3

Examination revealed normal lung sounds and no wheezing. *Id*. Dr. Bowersox found Plaintiff had

a normal mood and affect, as well as normal neurological functioning. *Id*. The treatment notes did

not document any tremor-related complaints or diagnosis. *See id*.

Plaintiff saw Dr. Bowersox in January 2015, for worsening tremors and weakness of the

extremities and tremors in the left arm and legs. (Tr. 212). In his treatment notes, Dr. Bowersox

wrote:

> [Plaintiff] has not worked for over a year as she cannot control her tremor. She
> really cannot do much with her right hand and she cannot do much of anything in
> the way of gainful employment due to her condition. She has applied for disability
> but was turned down two times. She has legal representation at this time.

*Id*. Examination revealed Plaintiff was fatigued and had a tremor in the right hand only. (Tr. 213).

Opinion Evidence

*Treating Physicians*

*Dr. Bowersox*

In February 2014, Dr. Bowersox completed a medical assessment form for the Ohio

Division of Disability Services. *See* Tr. 186-89. Dr. Bowersox listed Plaintiff's diagnoses as:

depressive disorder, anxiety state, panic attacks, social anxiety disorder, prolonged grief reaction,

essential tremor, insomnia, irritable bowel syndrome, and hypertension. (Tr. 189). Dr. Bowersox

stated Plaintiff could not leave her apartment due to panic feelings, and her hand tremors were

worse when she was nervous. *Id*.

In January 2015, Dr. Bowersox completed a mental impairment questionnaire. *See* Tr. 208-

09. In the check-box form, Dr. Bowersox marked "rare"[1] in every area of intellectual functioning,

---

1. A "rare" ability was defined as an "activity [which] cannot be performed for any appreciable
time." (Tr. 208).

4

except he found Plaintiff could "occasionally"[2] follow simple instructions. *See id*.  He opined Plaintiff could rarely: follow work rules, use judgment, maintain attention or concentration, respond to changes in routine, maintain attendance, deal with the public, relate to coworkers and supervisors, function independently without redirection, deal with work stress, or remember complex instructions. *Id*. Dr. Bowersox based the limitations on Plaintiff's depression, tremors, hypertension, and irritable bowels. (Tr. 209). In the area of personal and social adjustment, Dr. Bowersox opined Plaintiff could occasionally maintain her appearance, socialize, or relate predictably in social situations. *Id*. Plaintiff could frequently behave in an emotionally stable manner and manage funds and schedules. *Id*.

The same day, Dr. Bowersox completed a questionnaire regarding Plaintiff's physical functional capacity. *See* Tr. 210-11. He opined Plaintiff could only occasionally lift two pounds with her left hand, and could not lift any weight with her right hand. (Tr. 210). Further, he opined Plaintiff could occasionally reach, push/pull, and engage in fine and gross manipulation with her left hand. (Tr. 211).  She could not engage in fine or gross manipulation with her right hand. *Id*. Dr. Bowersox opined Plaintiff could never climb, and could rarely balance, stoop, crouch, kneel, or crawl. (Tr. 210). Dr. Bowersox found Plaintiff must avoid pulmonary irritants, noise, temperature extremes, and heights. (Tr. 211).

*Examining Physicians*

*Dr. Josell*

In March 2014, underwent a psychological evaluation with Paul Josell, Psy.D., at the request of the state agency. *See*. Tr. 181-84. Plaintiff reported depression and panic attacks over

---

2. An "occasional" ability was defined the "ability for activity [which] exists for up to 1/3 of work day." *Id*.

the past three to four years with agoraphobic responses that developed during the past year. (Tr. 181). Each of these symptoms worsened after the death of her mother. *Id*. Plaintiff stated she left her previous job due to problems with a new manager, panic attacks, tremors, and asthma symptoms brought on by chemicals. *Id*. Plaintiff reported insomnia, decreased appetite, low energy, and feeling helpless. *Id*. Further, Plaintiff stated she had no joy in her life, felt limited by panic attacks, avoided leaving her apartment, only drove locally, and spent most of her time watching TV and napping. (Tr. 182).

Plaintiff reported maintaining adequate relationships with her partner of 20 years and family. *Id*. Plaintiff denied taking medication, other than homeopathic remedies, and denied therapy participation due to poor finances. *Id*. Plaintiff participated in household chores such as vacuuming, laundry, and feeding the cats. *Id*. On examination, Dr. Josell found Plaintiff pleasant and cooperative, but described her as "down and grieving". *Id*. Further, Plaintiff was alert and oriented, and had clear speech. *Id*. Dr. Josell found Plaintiff's responses to cognitive tests indicated "limited" immediate recall and concentration. *Id*.

Dr. Josell diagnosed major depressive disorder, single episode, moderate, and panic disorder with agoraphobia. (Tr. 183). Dr. Josell opined:

1. [Plaintiff's] mental abilities in understanding, remembering and carrying out instructions, do not appear impaired at this time.

2. [Plaintiff's] mental abilities in maintaining attention and concentration, persistence, and pace to perform tasks and to perform multi-step tasks appear impaired to the extent that her panic and depression impact on energy and follow-through in her life at this time.

3. [Plaintiff's] mental abilities in responding appropriately to supervision and to coworkers in a work setting do not appear impaired at this time.

4. [Plaintiff's] mental abilities in responding appropriately to work pressures in a work setting appear impaired to the extent that her mood disturbance, as well as panic and agoraphobia limit her level of functioning, as described above.

(Tr. 183-84).

*Dr. Bradford*

In April 2014, Plaintiff was examined by Dorothy Bradford, M.D., at the request of the state agency. (Tr. 190-98). Plaintiff's initial complaints were a right-hand tremor and asthma triggered by smells. (Tr. 195). Plaintiff reported her tremor was intermittent, but never completely went away. *Id*. Further, Plaintiff stated "she can't use the right hand for much", but "[did not] feel it was bad enough that she need[ed] meds." *Id*. Dr. Bradford reported a normal exam including a normal station, posture, and gait; full extremity range of motion; and normal recent and remote memory. (Tr. 197-98). Dr. Bradford noted Plaintiff had a "benign familial tremor" in her right arm that impaired her fine and gross manipulation, but Plaintiff was able to stop the tremor. (Tr. 198). Plaintiff declined treatment for the tremor. *Id*. Dr. Bradford opined Plaintiff could not pick up a coin or key, write, hold a cup, open a jar, button/unbutton, zipper, or open a door when her tremor was present. (Tr. 192).

Plaintiff returned to Dr. Bradford in October 2014 for another physical evaluation. (Tr. 204-07). Plaintiff reported her tremor "comes and goes" but "never completely goes away and has gotten worse." (Tr. 204). Plaintiff stated she was unable to button, zip, or cut food with her right hand, but had not returned to her neurologist for medication. *Id*. Examination revealed Plaintiff had normal recent and remote memory, was overweight, unkempt, had clear lungs, and a resting tremor she was able to stop. (Tr. 205-06). Dr. Bradford found Plaintiff had a moderately severe gross resting tremor on the right hand that impaired fine and gross motor function. (Tr. 207). Plaintiff declined treatment for the tremor. *Id*.

*Reviewing Physicians*

In April 2014, state agency psychologist Katherine Fernandez, Psy.D., reviewed Plaintiff's medical file and opined Plaintiff was not significantly limited in her ability to carry out simple instructions, maintain attendance or maintain an ordinary routine. *See* Tr. 68-69. She opined Plaintiff was "capable of sustaining concentration and persistence to complete moderately complex and some detailed repetitive tasks in a work setting." (Tr. 69). Dr. Fernandez opined Plaintiff was not significantly limited in her ability to maintain socially appropriate behavior. *Id*. Dr. Fernandez found Plaintiff capable of work that did not have strict production standards, and required only superficial social interactions. *Id*.

Also in April 2014, state agency Kourosh Golestany, M.D., reviewed Plaintiff's medical file and opined she was limited to frequent fine and gross manipulation with the right upper extremity. *See* Tr. 66-68. Additionally, she must avoid concentrated exposure to pulmonary irritants due to asthma. *Id*.

In August 2014, state agency psychologist Paul Tangeman, Ph.D., reviewed Plaintiff's medical file and concurred with the mental work restrictions assessed by Dr. Fernandez. *See* Tr. 83-84.

In October 2014, state agency physician Diane Manos, M.D., reviewed Plaintiff's medical file and opined she could perform medium work with occasional use of her right upper extremity to push/pull and use hand controls. *See* Tr. 80-82. She further opined Plaintiff could occasionally engage in fine and gross manipulation with the right upper extremity due to tremors. (Tr. 82). She opined Plaintiff could occasionally lift or carry 50 pounds, and frequently lift or carry 25 pounds. (Tr. 81-82).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 29-52. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way the ALJ determined Plaintiff was. (Tr. 56). The VE opined such an individual could not perform Plaintiff's past work, but could perform other unskilled, light-work jobs such as a mail clerk, food service worker, or photocopy machine operator. (Tr. 57).

ALJ Decision

In a decision dated February 22, 2016, the ALJ first concluded Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). The ALJ found Plaintiff had severe impairments of essential right hand tremors, asthma, obesity, major depressive disorder, anxiety, panic disorder with agoraphobia, and social anxiety disorder. *Id*. None of these impairments – individually or in combination – met or medically equaled a listed impairment. (Tr. 14). Next, the ALJ concluded:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with certain restrictions. Specifically, the claimant can occasionally push or pull with the right upper extremity, as with the use of hand controls. She can frequently handle and finger with the right upper extremity, which is her dominant hand. She can never climb ladders, ropes, or scaffolds. She can never work in an environment with concentrated dust, fumes, odors, or other pulmonary irritants. The claimant is capable of unskilled, semi-skilled and skilled work, but not at a production rate pace such as on an assembly line. She is limited to occasional, superficial interaction with coworkers, with superficial defined as the ability to do such things as answer questions about the time of day or provide directions to the bathroom. She can have occasional interaction with supervisors, but limited to the communication of job critical information. Finally, she can have no contact with the public.

(Tr. 16). Further, the ALJ found Plaintiff unable to perform any past relevant work as a cleaner. (Tr. 22). The ALJ found Plaintiff was 50 years old, had a high school education, and was able to

communicate in English. *Id*. Relying on testimony from the VE, the ALJ concluded Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 23). Therefore, the ALJ concluded Plaintiff was not disabled. *Id*.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Plaintiff raises two challenges to the ALJ's decision. She contends he violated the treating physician rule, and that the RFC determination is not supported by substantial evidence. The Commissioner responds that the ALJ's decision is supported by substantial evidence. For the reasons outlined below, the undersigned recommends the decision of the Commissioner be affirmed.

11

*Treating Physician Dr. Bowersox*

Plaintiff first alleges the ALJ violated the treating physician rule when he failed to properly evaluate the opinion of Dr. Bowersox. Plaintiff asserts this opinion was rejected without good reasons. The Commissioner responds that the ALJ's decision to discount Dr. Bowersox's opinion is supported by substantial evidence.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers,* 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010).

When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the

frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ considered and weighed Dr. Bowersox opinion. In doing so, the ALJ thoroughly outlined the reasons for assigning little weight to Dr. Bowersox's physical and mental assessments:

> I give little weight to Dr. Bowersox as his opinion of such severe limitations is not supported by his own treatment notes nor is it consistent with the overall weight of the record. In fact, the claimant's own testimony as to her daily activities exceeds the restrictions placed on her by Dr. Bowersox. Furthermore, the claimant has not undergone treatment for the tremors. She was advised to return to her neurologist for reevaluation, but has not done so. While the financial constraint may be quite real, the claimant did not even discuss her tremors at each visit with Dr. Bowersox. One would expect that she would discuss her most limiting condition at each opportunity she had with her treating physician, especially if she limited her visits due to money. Yet, the claimant seems to only discuss her tremors at the appointments with Dr. Bowersox when she is discussing her disability paperwork.
>
> As Dr. Bowersox is a treating physician, his opinion is potentially entitled to controlling weight. However, as it is not supported by the evidence, I cannot assign it controlling weight and give it little weight.
>
> * **
>
> Turning my attention to the claimant's mental health concerns, I note she has also been diagnosed with depression and anxiety related disorders. Although she did not seek specialized treatment, she was treated by Dr. Bowersox.
>
> I give little weight to Dr. Bowersox opinion as it is not supported by treatment notes, nor is it consistent with the overall weight of the record, including the claimant's presentation at the hearing. Dr. Bowersox treated the claimant's mental health impairments, however, the only treatment was for a natural remedy. The claimant was never referred for counseling or advised to seek psychiatric care. Furthermore, Dr. Bowersox also opined that the homeopathic treatment for her depression, anxiety and panic attacks seemed to be "effective" and "helpful". [citing Tr. 187]. One would expect more significant treatment for such severe and limiting conditions.

(Tr. 19-21).

Here, the ALJ clearly provided reasons for the weight assigned to Dr. Bowersox's opinions and how the overall evidence speaks to the consistency and supportability of the opinion. *See* Tr. 19-21. For example, the ALJ pointed to the Plaintiff's testimony and how her daily activities far exceeded the limitations assigned by Dr. Bowersox. *Compare* Tr. 210 (Dr. Bowersox finding Plaintiff could lift/carry only two pounds with her left hand, and no weight at all with the right), *with* Tr. 42-43, 50 (Plaintiff's testimony that she lifts her ten-pound cat and handles basic self-grooming), *and* Tr. 156 (Plaintiff noting she vacuumed and did her own laundry).

Further, Dr. Bowersox described Plaintiff's tremor as "severe and continuous" (Tr. 210), but, as the ALJ pointed out, the doctor's own treatment notes on the tremor are noticeably bare for such a "severe" condition. *See* Tr. 222 (no mention of the tremor in Dr. Bowersox examination notes from Plaintiff's March 26, 2013 visit); *see also* Tr. 226 (Dr. Bowersox did not mention the tremor in his general examination notes, only states Plaintiff was "positive for weakness and essential tremor".); s*ee also* Tr. 230 (December 2013 visit where the tremor is not mentioned anywhere in the visit summary). Additionally, the ALJ accurately points out Dr. Bowersox did not offer any treatment for the tremor in his records. *See* Tr. 218-237. During her testimony, Plaintiff noted the reason she did not seek further treatment for the tremor was due to her financial difficulties. *See* Tr. 41-42. However, as the ALJ noted, Plaintiff's failure to report such symptoms while already visiting a doctor seems to undermine the alleged severity of the symptoms. *See Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004). ("[W]hen a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of

14

disabling pain."); *see also* SSR 96-7p (an "individual's statements may be less credible if the level of frequency of treatment is inconsistent with the level of complaints").

The ALJ also gave good reasons for discounting Dr. Bowersox opinion regarding Plaintiff's mental health limitations. For example, the ALJ points out the mental health limitations assigned by Dr. Bowersox also conflict with his treatment notes. (Tr. 21). Most notably, the check-box limitations assigned by Dr. Bowersox are "quite limiting, indicating very severe mental health problems." Tr. 21 (citing Tr. 208). Yet, Dr. Bowersox never referred Plaintiff for any mental health counseling services, and described her self-prescribed herbal treatments as "effective" and "helpful". (Tr. 187). These reasons, which are supported by substantial evidence in the record, touch on the factors of consistency and supportability of the opinion. *See* 20 C.F.R. § 404.1527(d)(2)).

Again, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ealy,* 594 F.3d at 514. In sum, the undersigned finds the ALJ gave good reasons for assigning little weight to Dr. Bowersox's opinions and recommends the Commissioner's decision in this regard be affirmed.

*RFC Assessment*

Plaintiff next challenges the ALJ's RFC determination regarding her right-hand abilities, and contends it was error to find her capable of frequent handling and fingering in the right upper-extremity, and occasional pushing/pulling with the same. Plaintiff argues the finding is not supported by substantial evidence, and contends any limitation in her right extremity should have been limited to "occasional or less". The Commissioner responds the ALJ's determination is

supported by substantial evidence. For the reasons stated below, the undersigned finds substantial evidence supports the RFC reached by the ALJ and recommends the decision be affirmed.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence *Id.* § 404.1529. While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(e)(2), 404.1546. The Court must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ" even if substantial evidence or indeed a preponderance of the evidence *also* supports a claimant's position. *Jones*, 336 F.3d at 477.

To support her position for a more limited RFC, Plaintiff relies heavily on Dr. Bowersox's opinion. *See* Doc. 12, at 10-12. As mentioned above, the ALJ pointed out the inconsistencies between the severe limitations assigned by Dr. Bowersox, and Plaintiff's testimony regarding her own abilities. And, as noted above, these were good reasons for discounting that opinion.

Further, the ALJ recognized Plaintiff sought very limited treatment for the tremor during the relevant time period. *See* Tr. 18. Specifically, Plaintiff saw Dr. Bowersox because she slipped in the shower in March 2013 and did not mention the tremor; nor did the doctor's treatment notes indicate a tremor was present. (Tr. 222). The next time Plaintiff was seen by Dr. Bowersox was in September of that year, where she sought treatment for the tremor and assistance with disability paperwork. (Tr. 226). Dr. Bowersox did not offer any treatment for the tremor during the visit. *Id*. In December of the same year, Plaintiff sought treatment from Dr. Bowersox for asthma related symptoms – not a tremor. (Tr. 230). The examination notes indicate a tremor was present, but the notes do not indicate any treatment was sought or offered. *Id*.  The tremor was not discussed with

Dr. Bowersox again until January 2015. (Tr. 234). During the appointment, a tremor was observed, and Plaintiff indicated it had worsened since her last visit. *Id*. Dr. Bowersox recommended Plaintiff see a neurologist to follow-up. (Tr. 236). The ALJ recognized there are no further medical treatment notes regarding Plaintiff's tremor, and it was not error for him to consider their absence. *See Strong,* 88 F. App'x at 846.

Further, as noted above, Plaintiff herself testified her physical activities exceeded the limitations assessed by Dr. Bowersox. *See* Tr. 42-43, 50 (Plaintiff testimony that she lifts her ten-pound cat and handles basic self- grooming); *see also* Tr. 156 (Plaintiff noting she vacuumed and did her own laundry); Tr. 182 (Plaintiff fixes small meals, and does household chores). It was reasonable for the ALJ to infer these activities suggested a greater functional capacity than Dr. Bowersox assessed. *See Irvin v. Soc. Sec. Admin*., 573 F. App'x 498, 501 (6th Cir. 2014) (in weighing a medical source opinion, ALJ may properly consider inconsistencies between the opinion and Plaintiff's activities of daily living).

Again, the ALJ did not find Plaintiff had *no* limitation, rather, that it was less substantial than Dr. Bowersox opined. And, although Plaintiff can point to evidence suggesting a contrary conclusion, this Court must affirm even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones,* 336 F.3d at 477. The ALJ's evaluation of Dr. Bowersox's opinion, combined with his review of Plaintiff's medical records, provide substantial evidence to support the ALJ's determination. Thus, the undersigned recommends the court find the ALJ's conclusion regarding Plaintiff's RFC is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and recommends the decision be affirmed.


 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).